**CITY OF HOUSTON, Appellant,**

v.

**HS TEJAS, LTD., Appellee.**

**No. 01–09–00393–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 22, 2009.

Rehearing Overruled Nov. 19, 2009.

Cora Garcia, The City of Houston Legal Department, Houston, TX, for Appellant.

J. Marcus Hill, Hill & Hill, Attorneys at Law, Bruce D. Mosier, Mosier & McEnrue, P.C., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK, Justices BLAND, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

HS Tejas, Ltd. filed suit against the City of Houston, claiming that a 2006 amendment to the City's Code of Ordinances regulating development in floodways was an unconstitutional taking of its property, which is located in the floodway. The ordinance at issue was amended again in 2008, prior to the original filing of this litigation, and HS Tejas does not complain of any injury after the effective date of the 2008 amendment. The City filed a plea to the jurisdiction asserting, among other things, that HS Tejas's claim was not ripe and that the trial court lacked jurisdiction to hear the case. The trial court denied the City's plea to the jurisdiction, and this

interlocutory appeal followed.[1]

Because HS Tejas has failed to allege a concrete injury as is necessary to establish subject-matter jurisdiction in this case, we reverse the trial court's order denying the plea to the jurisdiction, and remand the cause for further proceedings.

### Background

HS Tejas purchased four vacant tracts of land in Houston, Texas for the purpose of subdividing them into platted subdivisions. The company alleges that it intended to sell parcels to purchasers as residential or commercial building lots, or to build residences or commercial buildings on the subdivisions. HS Tejas acquired the first of the four pieces of property at issue in this dispute in 1995. The other three tracts were purchased by HS Tejas in 2003.

HS Tejas alleges that prior to October 1, 2006, the City of Houston's Code of Ordinances ("Code") restricted development within the City's floodway but allowed the City Engineer to issue permits notwithstanding those restrictions. After Tropical Storm Allison, the Federal Emergency Management Agency undertook a study of the impact of the storm on some of the bayous and drainage channels in the City of Houston. As a result of this study, maps known as Flood Insurance Rate Maps ("FIRMs") were prepared in 2006 and formally adopted on June 18, 2007. Before the creation of the FIRMs, the HS Tejas properties at issue were not located not in a floodway. The FIRMs, however, for the first time, placed HS Tejas's property in a floodway.

Effective October 1, 2006, the City amended the Code to further restrict development in the floodway. Houston, Tex., Ordinance 2006–894 (Aug. 30, 2006). Under the 2006 amendment, Code section 19–43(a)(2) prohibited the issuance of a permit for "development to be located in any floodway . . . if that development provides for . . . [n]ew construction, additions to existing structures, or substantial improvement of any structure within the floodway. . . ." Id. § 26 (former Code § 19–43). Code section 19–43(d) allowed the city engineer to issue a permit, even if a permit application was denied under section 19–43(a)(2), so long as the general appeals board found and determined in writing that the improvement was insubstantial and would not increase flood levels during occurrence of the base flood or impede the flow of floodwaters. Id.

Code section 19–20, as amended in 2006, provided in relevant part that "[v]ariances shall not be granted for development within any floodway if the development cannot meet the requirements of section 19–43(b) of this Code." Id. § 18 (former Code § 19–20). Code section 19–43(b) permitted building in a floodway only if "necessary to protect the health, safety and welfare of the general public." Id.

On July 23, 2008, the Code was again amended to allow the City Engineer greater discretion in issuing permits for the development of vacant land within the floodways, if certain criteria are met.[2] See HOUSTON, TEX.CODE OF ORDINANCES Houston,

---

1. TEX. CIV. PRAC & REM.CODE ANN. § 51.014(a)(8) (Vernon 2007).

2. Section 19–43(d) now reads:

(d) While the community acknowledges the increased risks associated with development on vacant land in the floodway, the city engineer shall issue a permit for such development in a floodway, or any special flood hazard area for which a floodway has not been designated, if the city engineer determines that:

(1) The bottom of the lowest horizontal structural member of the structure will be elevated at least 18 inches above the base flood level;

Tex., Ordinance 2008–658, § 10 (July 23, 2008) (codified at HOUSTON, TEX.CODE OF ORDINANCES § 19–43 (2009)). The July 23, 2008 ordinance amendments became effective September 1, 2008. *Id.* § 14.

HS Tejas sued the City on September 30, 2008, alleging that after FEMA approved the new FIRMs, its property was within a newly delineated floodway. HS Tejas contends that, in light of that designation, the City's 2006 amendments to section 19–43(a) of the Code prohibited the issuance of building permits to HS Tejas for "new construction, additions to existing structures or substantial improvement of any structure" on its property. In addition, HS Tejas contends that the Code, as it applied until September 1, 2008, prohibited the City Engineer from issuing any building permits for such construction. HS Tejas alleges that during that period of time, the City's ordinance deprived it of the use, benefit, and enjoyment of its property, amounting to a taking without just compensation.

The City's answer alleges that HS Tejas failed to exhaust the administrative remedies allowed by the Code. The City provided an affidavit from the City Engineer attesting that HS Tejas had not yet applied for a development permit for its property, that no such permit had been yet denied to it, and that no appeal had been taken from such a denial. The City also filed a plea to the jurisdiction contending that, although HS Tejas alleged that it acquired the property for the purpose of developing it and selling it, HS Tejas did not allege any specific improvement or sale that was impacted by the 2006 amendment. The City further alleged that, because HS Tejas had not filed an application for a permit, nor had it yet appealed such a denial as allowed by the Code, its claims had never ripened and the trial court lacked jurisdiction to consider its petition. Finally, the City alleged that the 2008 amendment mooted HS Tejas's claims as to the 2006 ordinance because the 2008 amendment significantly loosened the previous ordinance's restrictions on development in the floodway.

In its response, HS Tejas did not dispute the fact that it did not apply to the City for building or development permits before it filed suit. However, HS Tejas claimed that, under the plain language of the 2006 ordinance, its intended use for the property was expressly forbidden and the Code allowed no discretion or variances under such circumstances. Therefore, HS Tejas argued, its application for a permit would have been futile. Furthermore, HS Tejas alleged that the enactment of the 2008 amendment was irrelevant because it had already sustained damages under the prior ordinance. After a hearing, the trial court denied the City's plea to the jurisdiction, and this interlocutory appeal followed.

## Standard of Review

 In its sole issue, the City challenges the trial court's decision to deny its

---

(2) The foundation system for the structure will be pier and beam construction;

(3) The applicant has submitted an engineering analysis acceptable to the city engineer, certified by a professional engineer licensed in the State of Texas, that demonstrates that the applicant will provide floodway conveyance offset volume at a rate defined by the city engineer. The floodway conveyance offset volume may be provided on the applicant's site or at an off-site mitigation facility located within one-quarter mile upstream and in the same watershed as the site. If the applicant chooses to provide off-site mitigation, the applicant shall also comply with the requirements of section 19–17(c).

HOUSTON, TEX CODE OF ORDINANCES § 19–43 (2009), *available at* http://www.municode.com/resources/gateway.asp?pid=10123 & sid=43.

plea to the jurisdiction. We review the trial court's ruling on a plea to the jurisdiction under a de novo standard. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). If the plea challenges the sufficiency of the claimant's pleadings, the trial court must construe the pleadings liberally in the claimant's favor and deny the plea if the claimant has alleged facts affirmatively demonstrating jurisdiction to hear the case. If the pleadings are insufficient, the court should afford an opportunity to re-plead if the defects are potentially curable but may dismiss if the pleadings affirmatively negate the existence of jurisdiction. *Id.* at 226–27.

 If the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *Id.* at 227. If the evidence creates a fact question regarding jurisdiction, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact-finder. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 227–28. In reviewing the evidence presented in support of the plea to the jurisdiction, we take as true all evidence favorable to the nonmovant. *Id.* at 228. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* "[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c).... By requiring the [political subdivision] to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to put on their case simply to establish jurisdiction." *Id.* (internal quotations and citation omitted); *accord Dallas County v. Wadley,* 168 S.W.3d 373, 377 (Tex.App.-Dallas 2005, pet. denied) ("[On a plea to the jurisdiction,] the burden is on the government to meet the summary judgment standard of proof.").

 We remain mindful of the Texas Supreme Court's admonishment that, although the plaintiff's claims may form the context against which the jurisdictional plea is determined, the plea generally "should be decided without delving into the merits of the case." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). In general, "the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction." *Id.* at 554.

### Analysis

The Texas Constitution provides that no "person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made." TEX. CONST. art. I, § 17; *Sheffield Dev. Co., Inc. v. City of Glenn Heights,* 140 S.W.3d 660, 669 (Tex.2004). Similarly, the Just Compensation Clause of the Fifth Amendment provides that "private property" shall not "be taken for public use without just compensation." U.S. CONST. amend. V. The Just Compensation Clause has been construed to apply to the states by operation of the Fourteenth Amendment. *Mayhew,* 964 S.W.2d at 933.

 Inverse condemnation occurs when property is taken for public use without proper condemnation proceedings and the property owner attempts to recover compensation for that taking. *City of Dallas v. Blanton,* 200 S.W.3d 266, 271 (Tex. App.-Dallas 2006, no pet.). To state a cause of action for inverse condemnation, a plaintiff must allege: (1) an intentional governmental act; (2) that resulted in his property being taken, damaged, or de-

stroyed; (3) for public use. *Id.* Although the Texas Constitution's adequate compensation provision is worded differently from the just compensation clause of the Fifth Amendment to the United States Constitution, the Texas Supreme Court has described them as comparable and generally looks to federal cases for guidance in takings cases. *See Hallco Tex., Inc. v. McMullen County,* 221 S.W.3d 50, 56 (Tex. 2006); *Sheffield,* 140 S.W.3d at 669.

## Did HS Tejas Allege a Ripe Claim?

 Ripeness is an element of subject-matter jurisdiction and, as such, is subject to de novo review. *Mayhew,* 964 S.W.2d at 928–29. We look to the experience of the federal courts in determining the ripeness of constitutional challenges to land-use regulations. *Id.* at 928–29.

 A regulatory-takings claim may challenge a land-use restriction on its face or as applied to particular property. *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494, 107 S.Ct. 1232, 1246, 94 L.Ed.2d 472 (1987) (recognizing "an important distinction between a claim that the mere enactment of a statute constitutes a taking and a claim that the particular impact of government action on a specific piece of property requires the payment of just compensation"); *City of Corpus Christi v. Pub. Util. Comm'n,* 51 S.W.3d 231, 247 (Tex.2001). A facial challenge is ripe when the restriction is imposed, but an as-applied claim is not ripe until the regulatory authority has made a final decision regarding the application of the regulation to the property. *Yee v. City of Escondido,* 503 U.S. 519, 533–34, 112 S.Ct. 1522, 1531–32, 118 L.Ed.2d 153 (1992); *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985).

 HS Tejas claims its challenge is a facial challenge in which ripeness is not an issue. However, because HS Tejas does not allege that the sections of the Code at issue do not "substantially advance a legitimate state interest" no matter how they are applied, we construe HS Tejas's claim as complaining that the Code, as applied to its property, amounts to an unconstitutional regulatory taking. *See Yee,* 503 U.S. at 533–34, 112 S.Ct. at 1531–32.

 The City asserts that HS Tejas has failed to allege a concrete injury sufficient to establish a ripe controversy. Specifically, the City alleges that HS Tejas's takings claim is based solely on a hypothetical possibility of improving or selling its property between the effective dates of the 2006 and 2008 amendments, and thus does not constitute the type of specific injury sufficient to support a regulatory takings claim. We agree.

 A case is not ripe when the determination of whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass. *See Waco Indep. School Dist. v. Gibson,* 22 S.W.3d 849, 852 (Tex.2000) (holding that injunctive action against school district involving equal rights and due course of law claims arising out of student promotion policy was not ripe because policy had not been applied at time suit was filed). HS Tejas has not alleged any specific improvement or sale that was impacted or impeded by the 2006 amendment. Moreover, HS Tejas did not submit to the trial court any plan for development or renovation of the property. In the absence of a specific allegation that the 2006 amendment impeded some actual development or sales plan, there is no concrete injury alleged sufficient to support a regulatory takings claim. *Gibson,* 22 S.W.3d at 852. In fact, under the 2008 ordinance, which affords the City

Engineer greater discretion in issuing permits, HS Tejas may now apply for a development permit, giving the City an opportunity to abate any alleged taking. HOUSTON, TEX.CODE OF ORDINANCES § 19–43 (2009); *Mayhew*, 964 S.W.2d at 930.

HS Tejas argues that this case is similar to the circumstances this Court confronted in *City of Houston v. O'Fiel*, No. 01–08–00242–CV, 2009 WL 214350 (Tex.App.-Houston [1st Dist.] Jan. 29, 2009, pet. filed), and *City of Houston v. Noonan*, No. 01–08–01030–CV, 2009 WL 1424608 (Tex. App.-Houston [1st Dist.] May 21, 2009, no pet. h.). Both *O'Fiel* and *Noonan* involved identical challenges to the City's 2006 amendment to the flood ordinance. *Noonan*, 2009 WL 1424608, at *1; *O'Fiel*, 2009 WL 214350, at *1. In each case, this Court upheld the trial court's denial of the City's plea to the jurisdiction on ripeness grounds. But the plaintiffs in each of those prior cases alleged a concrete injury in a way that is lacking here. In *O'Fiel*, the plaintiffs owned a home on the property affected by the 2006 amendment, and they alleged they were unable to build an improvement on their property.[3] And in *Noonan*, the plaintiff actually filed an application for a building permit, which was denied.[4] In contrast, HS Tejas owned vacant lots, and it has made no allegation of any specific plans for improvement or sale that were adversely affected by the 2006 amendment.

In a suit against the State, the plaintiff has the burden to establish that the court has jurisdiction over the case. *Miranda*, 133 S.W.3d at 226. Whether the plaintiff has met its burden is a question of law. *Id.* If the pleadings do not affirmatively show that the trial court has jurisdiction, but do not affirmatively demonstrate that there is no jurisdiction, the plaintiff should be given an opportunity to amend its pleadings. *Id.* at 226–27.

Because HS Tejas has not pleaded specific jurisdictional facts indicating how HS Tejas was impacted by the 2006 amendment before passage of the less restrictive 2008 ordinance, we hold no concrete injury has been alleged sufficient to support a regulatory takings claim. Therefore, HS Tejas did not carry its burden to establish that the trial court had subject matter jurisdiction over this case. However, the petition did not affirmatively establish that there was no jurisdiction. Under these circumstances, HS Tejas should be given an opportunity to amend its petition. *See id.*

## Conclusion

"A trial court must grant a plea to the jurisdiction, after providing an appropriate opportunity to amend, when the pleadings do not state a cause of action upon which the trial court has jurisdiction." *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex.2004). Here, HS Tejas's petition did not state a cause of action upon which the trial court had jurisdiction. Therefore, the trial court erred in denying the City's plea to the jurisdiction. HS Tejas should be afforded the opportunity to amend its petition before its suit is dismissed with prejudice.

Accordingly, we sustain the City's issue. We reverse the order denying the plea to

---

3. *City of Houston v. O'Fiel*, No. 01–08–00242–CV, 2009 WL 214350, at *1 (Tex.App.-Houston [1st Dist.] Jan. 29, 2009, pet. filed); *see also* Brief of Appellees at 9, *City of Houston v. O'Fiel*, No. 01–08–00242–CV, 2008 WL 4200259 (Tex.App.-Houston [1st Dist.] July 24, 2008) (describing potential improvements).

4. *City of Houston v. Noonan*, No. 01–08–01030–CV, 2009 WL 1424608, at *2 (Tex. App.-Houston [1st Dist.] May 21, 2009).

the jurisdiction and remand the cause to the trial court for further proceedings consistent with this opinion.